JUDGE DUVALL
delivered the opinion oe the court:
Keene executed to Howk six notes, dated the 24th May, 1851, four of them for $633 71 each, payable in one, two, three, and four years, respectively; one of the remaining notes was for $10,561 90, and the other for $3,513 80, each payable four years after date. On the same day a mortgage was executed by Keene, to secure these notes, on certain real estate, for the payment of which they had been given.
All the notes, except the one last named, together with the mortgage, were assigned by Howk to Chambers, in June, 1851. In September, 1853, Chambers brought suit on the two notes which had matured in May, 1852 and 1853. In May, 1854, he also brought suit upon the third note, it having matured in May of that year. The two actions were consolidated. A personal judgment, and a judgment for foreclosure and sale of the mortgaged property, were rendered in the two actions in October, 1854, which judgments were satisfied by a sale of part of the mortgaged property.
On the 25th of May, 1855, Chambers filed an amended petition, setting up his two remaining notes which had fallen due the day before, and praying a foreclosure and sale of the residue of the property. Howk answered this amendment, alleging that he was still the owner of the note for $3,513 80, which had also fallen due, and praying that so much of the mortgaged property as was necessary might be applied to the payment of his debt. This answer was made a cross-petition against Chambers and Keene.
On the 5th July, 1855, judgment was rendered in favor of Chambers upon the two notes set up in his amended petition, and so much of the mortgaged property ordered to be sold as might be sufficient to pay them. The cross-petition of Howk was continued. The whole of the remaining mortgaged property was sold, and the proceeds applied to the satisfaction of *293 tbe last judgment, leaving an unpaid balance of over $2,000. Howk became the purchaser at both of these sales.
For the balance due on his judgment, Chambers caused an execution to issue against Keene on the 4th of September, 1855, being eleven days after the sale made by the commissioner, and nearly two months after the rendition of the judgment. The execution was returned “no property found,” &c., in November following; and he thereupon filed an amended petition, seeking to make Howk liable, upon his assignment, for the balance due on the judgment against Keene. Howk answered, resisting the relief sought against him, on the ground that Chambers had failed to prosecute, with due diligence, his remedies against Keene.
The circuit judge was of opinion that Howk was discharged from liability by the laches of Chambers, and dismissed the amended petition. To reverse that judgment, Chambers prosecutes this appeal; and the question of diligence is, therefore, the only subject of inquiry.
To enable the assignee to recover against his assignor, upon the implied contract resulting from the assignment, it is indispensable that the assignee should have prosecuted, with reasonable diligence, all his remedies, legal and equitable, against the debtor; and the evidence of the insolvency of the debtor, which is furnished by an execution, and the return of nulla bona, is, in general, indispensable. Upon the assignment of a legal demand, the assignee is of course bound to pursue with diligence all the legal remedies for its enforcement, and, should they prove ineffectual, he must next resort to any equitable remedy of which it is in his power to avail himself. These general principles were established by the earliest decisions upon this subject, and they have been uniformly adhered to ever since. And, accordingly, where the note assigned was secured, in whole or in part, by a mortgage or other equitable lien, the assignee was bound to pursue his legal remedy with the same promptness, in all respects, as if no such security existed; nor was he ever allowed to suspend the legal proceeding until he should first have exhausted his equitable remedy. Such an inversion of the natural and legal order of proceeding *294 would be obviously prejudicial to the interests of the assignor, and was never tolerated.
But it is contended that these obligations and rights growing out of the relation of assignor and assignee, have been essentially modified by the Civil Code, {see. 406,) which provides that, in an action on a mortgage or lien, the judgment may be rendered for the sale of the property, and for the recovery of the debt against the defendant personally.
Under the rules of practice which prevailed before the adoption of the Code, the holder of a note secured by mortgage had the right to bring his action at law for a personal judgment, and at the same time his suit in equity for the foreclosure of his lien; or he might adopt either of the two proceedings, at his option. But, as before suggested, if he held the note by assignment, it was indispensable that he should pursue promptly his legal remedies, in order to preserve his recourse upon his assignor. And the only effect of this provision of the Code has been to authorize a personal judgment, and a judgment of foreclosure and sale in the same action, instead of requiring two distinct forms of proceeding as heretofore. The rights of the assignee, and the duties of the assignor, remain wholly unaffected by it.
It was the duty of the appellant, therefore, to have caused an execution to issue on his personal judgment against Keene, within a reasonable time after the rendition of the judgment. The delay of nearly two months is certainly inconsistent with the reasonable diligence which he was bound by law to exercise. The fact that the debtor is proved to have been then insolvent, neither authorized the delay nor exempts the appellant from its legal consequences. Nor is the delay sufficiently accounted for by the. additional circumstance relied upon, that the appellant was in the meantime prosecuting, in good faith, his equitable remedy, by a sale of the mortgaged property. The rule of practice suggested by counsel, by which the plaintiff is in such cases prevented from proceeding at the same time to enforce both judgments, may be convenient and proper where the rights of none but the immediate parties to the suit are involved, but no such rule of practice is prescribed by the *295 Code, and tbe courts should never adopt it in cases where the rights of assignees may be thereby jeopardized. In the enforcement of judgments of this description upon assigned notes, if either of the two remedies is to be postponed, it should be the enforcement of the equitable lien, for the obvious reason that there would in general be less probability of injury resulting to any of the parties interested. But whatever discretion the court might properly exercise in this matter, if the plaintiff in such cases would preserve his recourse against his assignor, he can do so only by adhering to the inflexible rule of law which requires, as the legal test of diligence, an execution upon his personal judgment, within a reasonable time after its rendition. If he departs from this rule, he does so at his peril.
There appears to be no cross-appeal on the part of Howk^ and for that reason the alleged errors of which his counsel complains cannot be inquired into.
The judgment is affirmed.