JONES ET. AL., VS. STATE, USE, &C.

PROMISSORY NOTE: *Promise to pay county scrip is not.    Liability of assignor.*

A written promise to pay county scrip is not a promissory note but a special agreement to deliver property; and the assignor of such instrument is not liable as an endorser of a note for the payment of money, but only after the maker has been prosecuted to insolvency or shown to be so notoriously insolvent as to render a suit against him useless; and the measure of his liability is the consideration paid for the note and interest. (Eakin, J., reserving his opinion as to the liability of the assignor.)

APPEAL from *Bradley* Circuit Court.

HON. T. F. SORRELLS, Circuit Judge.

*McCain & Crawford*, for appellants.

1.    The note was not commercial paper, and there could be no liability on the part of Barnett as endorser.    *5th Ark.* 481.

2.    Bradley county having ceased to be a corporation by Act Feb. 27. 1879, the endorsement was a nullity.    A county cannot become the assignee of a written contract, since that Act, at least.    Even before, it is doubtful whether it would not have been *ultra vires* for a county to have become purchaser and endorsee of a note.    *See Baldwin v. Scoggin,* 15 *Ark.*

Jones, et al, v. State, Use, &c.

Section 3 of the Act authorizing suits to be brought in the name of the State for the use of counties, only applies to claims existing at the time, and possibly such contracts as are authorized to be made concerning bridges, public buildings, etc.

A devise to an unincorporated society is void; 4 *Wheat* 1. So grant to an unincorporated town.   4 *Kents Com.* 462.

There is no law authorizing the taking of such paper by a county.

SMITH, J.   This was an action in the name of the State for the use of Bradley county against the maker and assignor of the following instrument:

"By the first day of January, A. D. 1878, I promise to pay J. R. Barnett three hundred and thirty-eight 32-100 dollars in county scrip, with five per cent. interest from date. April 9th, 1877.

(Signed)    A. C. JONES.
And endorsed :—Pay to Bradley County.

J. R. BARNETT.

Oct. 8th, 1879."

It was averred that the assignment was for value; that payment had been demanded of and refused by Jones, of which Barnett had notice, and that county warrants were, at the maturity of the paper, worth nine-five cents in the dollar.

A demurrer to the complaint was overruled and the defendants resting, a jury was called to assess the damages and upon the return of their verdict, final judgment was entered against both defendants.

It is urged that since the passage of the Act of February 27th, 1879, depriving counties of their corporate powers, a county can not maintain a suit, nor even become the assignee of a chose in action.   But Sec. 3 of that Act provides that "when any county has any demand against any persons or

corporations, suit thereon may be brought in the name of the State for the use of the county."

PROMIS-
SORYNOTE:
Promise
to pay coun-
ty scrip is
not.
Liability
of assignor.

As to Barnett, the Court erred in holding the complaint sufficient. Sec. 572 of Gantt's Digest is expressly restricted to instruments for the payment of money alone. This was not a promissory note, but a special agreement for the delivery of property. Our statute makes all contracts in writing for the payment of money or property assignable. *Gantt's Dig.*, sec. 563; *Hawkins v. Watkins*, 5 *Ark.*, 481, as modified by *Owen v. Lavine*, 14 *Id.*, 389; *Worthington v. Curd*, 15 *Id.*, 491.

But the assignor of a property note does not incur the liability of an indorser of negotiable paper; that is to say, he does not undertake to pay upon default of the maker and notice to himself. Before resort can be had to him, the assignee must have prosecuted the maker to insolvency, or it must be averred that the maker is notoriously insolvent, so as to render an action against him a vain and useless thing. *Dent v. Ashley, Hempst.*, 55; *Lemons v. Chouteau, Ib.*, 85.

Our statutes of assignments is in substance the same as the Virginia and Kentucky statutes on the same subject, and in the two cases last cited, some of the adjudications upon this subject are collected. The following cases will also be found to support the proposition we have stated. *Hume v. Long, Rep's.*, 6 *T. B. Monroe*, 115; *Levi v. Evans*, 7 *Ben Monroe*, 115; *Chambers v. Keene*, 1 *Met.* 293; *Lee v. Love*, 1 *Call.* 497, and cases cited by Minor in note to 3d *Edition*; *Brown v. Hull.* 33 *Grattan*, 23.

And the principle upon which the assignor's responsibility rests being a failure of consideration, the measure of the responsibility, in the event of recovery, is the consideration paid for the note assigned and lawful interest. *Duncan v. Littell*, 2 *Bibb*, 425; *Morehead v. Prather*, 1 *A. K. Marsh*, 542; *Davis v. Harrison*, 2 *J. J. Marsh*, 190; *Embry v. Steph-*

Jones, et al, v. State, Use, &c.

*enson*, 3 *Id.*, 268; *Wood v. Berthoud*, 4 *Id.*, 304; *Metcalfe v. Pilcher*, 6 *B. Monroe*, 530; *Elliott v. Threlkeld*, 16 *Id.*, 343; *Short v. Trubue*, 4 *Met.*, 300.

The judgment against Jones is affirmed. As to Barnett it is reversed with directions to sustain the demurrer.

### SEPARATE OPINION BY

EAKIN, J. I concur in the decision of the Court. In no view of the case, could an action be maintained against Barnett upon his endorsement, together with Jones sued upon the obligation. It could not be done by common law, and is not authorized by any statute.

I think this sufficient to decide the case, and am not prepared without grave consideration, in a case requiring it, to announce whether or not Barnett be held liable in a hypothetical case. That is, after prosecution of the maker of the obligation to insolvency, or something equivalent. In the sale of a mere *property* contract, which is merely transferred, so far as it appears, for what it is worth, without any saving against liability on one side, or exaction of a guarantee on the other, it is not so clear which takes the risk—that is to say, where it is a genuine and valid obligation and there is no fraud. Such contracts may stand on quite different grounds from those for payment of money, which are now, mostly, by common law and statute, placed upon the footing, in part or in whole, of commercial paper. The question is a very important one, in view of the gigantic dealings in "futures" which are becoming common. The Court will not be able hereafter to draw distinctions between scrips and wheat.

The point in our State seems to be new. I can neither recall nor find any direct adjudication, of this Court, upon it; nor, indeed, as yet, of any other, although with time I may be more successful. I desire to reserve my opinion.

The cases cited from Hempstead's Reports were under an

Jones, et al, v. State, Use, &c.

old Territorial statute of 1807, afterwards with some very important modifications introduced into the Revised Statutes of the State. Although neither of them were upon *property* contracts, both being upon the endorsements of plain promissory notes for money, yet they do go far to sustain the dictum of the opinion in this case. The statute made all bonds, bills, notes, &c., for the payment of money *or property,* assignable, so as to vest a right of action in the assignee. It was held under this statute that an endorsee was liable, but not until after the remedies against the maker had been exhausted. And the Court seems not to have noticed, as it had no occasion to notice in those cases, any distinction between notes for money and obligations to deliver property. Even with regard to money notes, assignable under the act, the Court could find no principle for holding a mere assignor liable as a guarantor, but confessedly, against its conviction of principle, based its ruling upon some decisions of Kentucky and Virginia under a similar statute. JUDGE JOHNSON in the latter case (*Lemons v. Choteau*) said: "If the question were now presented for the first time, it might admit of great doubt, whether, according to common law principles, the assignor would be responsible where the debt assigned was just and fair, and the failure to obtain payment resulted alone from the inadequacy of the maker of the bond or note. *It cannot be asserted that there is a failure of consideration,* because the right to a just debt is sold and transferred, and the inquiry arises whether the assignor or the assignee takes upon himself the risk of the insolvency of the obligor or payor. I should incline to the opinion that *where the parties were silent, the law would cast the risk upon the purchaser* of the bond or note, and would *not* raise an implied contract, upon the part of the assignor, that he took upon himself and insured the solvency of the obligor or maker of the note. But this question I consider at rest, &c."

Jones, et al, v. State, Use, &c.

It will be observed that these remarks were made concerning an obligation for money. They apply *a fortiori* from the nature of the case to obligations for *property*, which have no analogy whatever to instruments regulated by mercantile law. For myself, I feel rather inclined to follow the learned Judge's honest convictions of principle, than his example in submitting to anomalous precedents. For the cases he follows cannot be rested upon any common law principle whatever, and the statute simply made the instrument assignable for the purpose of vesting a right of action in his name, in the assignee, being wholly silent as to any obligations to arise from the assignor to the assignee. The question, in cases of non-negotiable paper never did, and never could, arise at common law, since no action could ever be brought except by the payee on the face of the paper, for the use of the assignee. The decisions, clearly, cannot be placed on the ground of no consideration, for valid promises are good considerations, and the assignee gets all the benefit of the promise of the maker, with the legal right to enforce it. He may judge of its value and regulate the price. Nor do the decisions conform with the idea that the assignor guarantees the payment; for the logical sequence of that would be, that, in case of failure to collect, he would be liable for the whole, instead of the amount for which he sold. It is difficult to conceive what sort of contract it is supposed the common law would imply on the sale of a chose in action, and I think the true view is, that none was implied at all, except that the promise was genuine.

Whatever pressure of precedent may have borne upon the territorial courts was, I think, relieved by the changes introduced by the Revised Statutes after the formation of the State. By the first section of Chapter XI, the old territorial law was, in substance, re-enacted, making all bonds, bills, note, etc., for the payment of money *or property* as-

signable. The object of that was shown by the succeeding section to be to enable the assignee to sue the maker in his own name, "in the same manner that the original obligee or payee might do." Nothing is said as to the liability of the assignor. So far it conformed with the territorial law, but after various provisions not affecting the matter under consideration, it was enacted by section 9, that "all endorsers or assignors of any instrument in writing, assignable by law, *for the payment of money alone*, on receiving due notice of the non-payment or protest of any such endorsed or assigned instrument in writing, shall be *equally* liable with the original maker, obligor or payee (evidently meaning payor) of such instrument, and may be sued for the same at the same time with the maker, obligor or payee thereof, or may be sued separately."

This made a total revolution of the territorial system, and if the Kentucky and Virginia statutes were similar to that, they differed very materially from the Revised Statutes of our own State. The change consisted in this, that the new Statute drew a distinct line between contracts for the payment of *money alone*, and those for the payment of *property*; and (save as to the allowance of equalities against the original payee, provided by another section,) placed the former on the footing of promissory notes in England, and bills of exchange under the law merchant. Notice of non-payment, or of protest, was required in apt time, to hold the endorsers; and, that being given, they became immediately liable to be sued for the whole face of the paper, either alone or with the makers. It was no longer necessary to pursue the latter to insolvency, nor was the assignee limited as formerly to the amount paid. It will be observed that the last quoted section applies to the very class of instruments, concerning which the rulings commented on had been made—all of which, so far as I have observed, are for the payment of money alone.

Jones, et al, v. State, Use, &c.

The statute so carefully prescribing the liability of the assignors of money contracts, is silent as to any liability of those of property contracts. The inferrence is irresistible that the legislature did not intend there should be any beyond such guarantees as the parties might make. Nothing is gained by saying that in adopting the old statute making them assignable, the legislature also adopted the rulings concerning them, for I am not yet advised that it had ever been ruled directly that the assignors of *property* contracts without a guarantee were liable to return the purchase money. Nor do I recall any case in this State where it has been so ruled since. None of the cases cited by the Court are to that effect.

In *Hawkins v. Watkins* the ruling was, that a bill drawn for property is not assignable at all so as to vest in the holder a right of action against the acceptor. This was evidently erroneous, and was overruled by *Owen v. Lavine*, in which it was held that the acceptor of a bill, payable out of funds which were contingent, was liable, on proof of the contingency having happened. But an acceptor is an original promisor upon acceptance. He makes the request his promise, and does not stand in the position of an assignor. *Worthington v. Curd & Co.* only holds that an endorsement in blank of a covenant to pay cotton vests a right of action against the *maker*, having no bearing whatever on the liability of the assignor or endorser.

I have thought it proper by a separate opinion in this case to reserve the right, with propriety, to question the soundness of the dictum of the Court as to the nature and extent of the liability of one who assigns a property note, that I may not be precluded by apparent assent, from a full consideration of it when directly presented.

My associates have thought proper to announce the rule, however, and I cannot withhold my assent from a decision

of the case, which, in result, accords with my own views, and could not be affected by a determination of my doubts either way. For Barnett is certainly not liable in this action.