ORFINGER, J.
 

 LR5A-JV, LP (“LR5A”), a Massachusetts limited partnership, seeks review of a non-final, post-judgment order setting a date for sale of real property, which was the subject of a 2008 final judgment of foreclosure. LR5A contends that the trial court was not authorized to order a post-judgment, judicial sale of the mortgaged property, or, if the trial court possessed such authority, it abused its discretion in ordering the sale. We disagree and affirm.
 

 In 2005, Little House, LLC, and Little Lakes, LLC (collectively, the “Borrowers”), entered into a loan agreement with LR5A, whereby LR5A loaned the Borrowers $17,500,000 to fund the construction of several condominium conversion projects throughout Florida. The Borrowers executed and delivered a promissory note to LR5A secured by a mortgage that encumbered undeveloped real property in Fla-gler County. Additional real property in Broward County, Florida also served as collateral for the obligation.
 

 The Borrowers defaulted on the note and mortgage and LR5A filed a foreclosure action on the Flagler County proper
 
 *693
 
 ty.
 
 [1]
 
 LR5A joined the Matanzas Shores Owners Association (the “Association”) as a defendant in the Flagler County action in an effort to foreclose claims of lien filed by the Association. The Association filed an answer and cross-claim, seeking damages against the Borrowers for unpaid assessments totaling approximately $400,000.
 

 LR5A filed a motion for summary final judgment of foreclosure on the Flagler County property, asserting priority over the rights of the Association. The trial court entered a final judgment of foreclosure, finding that LR5A was due $30,651,523.93, and set a date for a judicial sale of the property. Believing that orders of clarification and rehearing as to the Association’s liens may have adversely affected the priority of its mortgage, LR5A appealed. As a result, the sale was cancelled. This Court subsequently affirmed the final judgment of foreclosure, ruling that LR5A’s 2005 recorded mortgage was superior to the Association’s assessment liens and that section 720.3085(2), Florida Statutes (2007), did not dictate otherwise.
 
 See LR5A-JV, LP v. Little House, LLC,
 
 998 So.2d 1173 (Fla. 5th DCA 2008). The cause was remanded with instructions to proceed to foreclose LR5A’s superior mortgage. The Association then moved the trial court to set a sale date. Following a hearing on the motion, and over LR5A’s objection, the court entered an order setting a date for a judicial sale. LR5A now appeals this order.
 
 [2]
 

 LR5A contends that as the judgment holder, it has the right to control when, if at all, a foreclosure sale takes place under section 45.031, Florida Statutes (2010). According to LR5A, the Association, as a junior lien holder, cannot demand that a foreclosure sale date be set, and the trial court erred as a matter of law in setting the date for the judicial sale. The Association counters that section 45.031(1), gives the trial court the ultimate authority to order a judicial sale. We agree with the Association.
 

 Section 45.031(1) governs the procedures for judicial sales following entry of a final judgment of foreclosure. It provides in pertinent part:
 

 45.031. Judicial sales procedure
 

 In any sale of real or personal property under an order or judgment, the procedures provided in this section and ss. 45.0315-45.035 may be followed as an alternative to any other sale procedure if so ordered by the court.
 

 (1) Final judgment.—
 

 (a)
 
 In the order or final judgment, the court shall direct the clerk to sell the property at public sale on a specified day
 
 that shall be not less than 20 days or more than 35 days after the date thereof, on terms and conditions specified in the order or judgment. A sale may be held more than 35 days after the date of final judgment or order if the plaintiff or plaintiffs attorney consents to such time....
 

 § 45.031(l)(a), Fla. Stat. (2010) (emphasis added). This statute clearly required the trial court to set a judicial sale date between 20 to 35 days after entry of the final judgment or order directing a judicial sale, but allows an extension with the plaintiffs consent.
 

 Florida decisional law reflects that the matter of fixing the time for a judicial sale is set by statute, but that the trial
 
 *694
 
 court has reasonable discretion within the statutory framework to set or reset the date for such sale.
 
 State ex rel. Raulerson v. Sloan,
 
 134 Fla. 632, 184 So. 128 (1938);
 
 Macfarlane v. Macfarlane,
 
 50 Fla. 570, 39 So. 995 (1905);
 
 Commw. Mortg. Corp. of Am., L.P. v. Frankhouse,
 
 551 So.2d 599 (Fla. 4th DCA 1989). This seems consistent with the equitable nature of such proceedings.
 
 See
 
 § 702.01, Fla. Stat. (2010) (“All mortgages shall be foreclosed in equity .... ”);
 
 see also Marsh v. Marsh,
 
 72 Fla. 142, 72 So. 638 (1916) (stating that courts of equity have supervision over judicial sales made under their decree);
 
 Cross v. Fed. Nat'l Mortg. Ass’n,
 
 359 So.2d 464 (Fla. 4th DCA 1978) (reiterating that mortgage foreclosure is equitable action).
 

 LR5A relies on
 
 U.S. Bank National Ass’n v. Tadmore,
 
 23 So.3d 822 (Fla. 3d DCA 2009),
 
 Bankers Trust Co. of California, N.A. v. Weidner,
 
 688 So.2d 453 (Fla. 5th DCA 1997), and
 
 First Nationwide Savings v. Thomas,
 
 513 So.2d 804 (Fla. 4th DCA 1987), to support its contention that under section 45.031, the judgment holder enjoys the right to control the timing of a judicial sale. Each is distinguishable.
 

 Tadmore
 
 held that it was error for the trial court, in a foreclosure action involving a condominium unit, to enter an order requiring the plaintiff bank to proceed diligently to conclude its foreclosure action or pay the monthly maintenance fee on the unit. The appellate court explained that the bank was not liable to pay the condominium maintenance fee prior to obtaining title to the unit. The decision makes no mention of the trial court’s authority to set a date for a judicial sale pursuant to section 45.031(1).
 
 Weidner
 
 holds that the trial court erred in granting the family of the mortgagor, who had recently died, an indefinite stay of a scheduled foreclosure sale. This Court held there was no legitimate basis for entry of an indefinite stay, the inverse of the situation here. Finally,
 
 Thomas,
 
 like
 
 Weidner,
 
 similarly involved reversal of an order permanently cancel-ling a scheduled foreclosure sale without explanation. The Fourth District stated that “[a] lender has the right, under the statutes, except under extraordinary circumstances not found in this record, to proceed with the sale of any real estate on which it has successfully foreclosed its mortgage.”
 
 Thomas,
 
 513 So.2d at 805.
 
 Thomas
 
 neither holds nor suggests that a lender, who has undertaken foreclosure proceedings, has the unilateral right to control the process, including when or if a judicial sale occurs.
 

 In our earlier opinion in this dispute, we remanded the matter with instructions “to proceed to foreclose the superior mortgage of LR5A-JV.”
 
 LR5A-JV, LP,
 
 998 So.2d at 1175. Once the mandate issued and jurisdiction again resided in the trial court, the provisions of section 45.031(1) authorized the trial court to set a date for the judicial sale. The trial court’s order setting the judicial sale fully comports with the statute.
 

 LR5A alternatively argues that the trial court abused its discretion in setting the date of the judicial sale, thereby, subjecting it to the “whims of the Association.” “Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court.”
 
 White v. State,
 
 817 So.2d 799, 806 (Fla.2002).
 

 LR5A’s argument not only contravenes the provisions of section 45.031, but also ignores the Association’s interest in collecting lawful assessments on the subject property. As the Association points out, LR5A is not obligated under section 720.3085, Florida Statutes, to pay the Association’s assessments, yet, the Associa
 
 *695
 
 tion must still maintain the common property and facilities, which inure to the benefit of the property. Since foreclosure proceedings are equitable in nature, the trial court may, consistent with the statute, consider the interests of all of the parties in determining the matter of the judicial sale.
 

 Finally, the Association points out that the recent report of the Task Force on Residential Mortgage Foreclosure Cases, issued pursuant to a directive from the Florida Supreme Court, noted the adverse impact of the foreclosure situation on community associations and suggested the prompt resolution of foreclosure proceedings when possible.
 
 See
 
 Fla. Supreme Court Task Force on Residential Mortg. Foreclosure Cases,
 
 Final Report & Recommendations on Residential Mortgage Foreclosure Cases
 
 (Aug. 17, 2009), available at http://www.floridasupremecourt. org/pub info/documents/ Filed 8-17-2009 Foreclosure Final Report.pdf. Specifically, the Task Force noted that “community associations and their members, who are the owners of parcels in the communities, are severely impacted by the foreclosure situation....”
 
 Id.
 
 at 25-26. This is because of non-payment of assessments by defaulting owners and the fact that foreclosing first mortgagees, which take title through foreclosure, are not liable under Florida law for assessments until such time as title is issued.
 
 Id.
 
 Prompt resolution of foreclosure cases acknowledges the issues of property values and community stabilization.
 
 Id.
 
 at 41.
 

 In its Final Report, the Task Force also addressed problems with cancellation of sales by plaintiffs and suggested adopting a new standard, whereby foreclosing plaintiffs would be required to show cause before cancelling a sale in a pending matter:
 

 The current form foreclosure judgment permits the plaintiff to cancel the sale unilaterally simply by not showing up, because it includes the language that the sale will not be held unless the plaintiffs representative is present. As a result, a vast number of properties are in a state of limbo between final judgment and sale. For the sale to be reset, a judge must sign another order. Reviewing the motions to reset sale, an explanation of the cancellation is seldom given. Even if the cancellation is due to workout efforts with the borrower, there is no report of the status of the efforts. As a result, there is enormous waste of sale capacity and duplication of efforts in terms of resetting those sales being unnecessarily consumed in these cases.
 

 Id.
 
 at 26-27.
 

 The Task Force proposed a new standard Motion to Cancel and Reschedule Foreclosure Sale in its recommendations to the supreme court as to Rule and Form Changes, explaining:
 

 Currently, many foreclosure sales set by the final judgment and handled by the clerks of court are the subject of vague last-minute motions to reset sales without giving any specific information as to why the sale is being reset. It is important to know why sales are being reset so as to determine when they can properly be reset,
 
 or whether the sales process is being abused.
 
 Therefore, this form requires that the movant advise the court specifically as to why the foreclosure sale is being sought to reset. Again,
 
 this is designed at promoting effective case management and keeping properties out of extended limbo between final judgment and sale.
 

 Id.
 
 at 44 (emphasis added).
 

 In response, the Florida Supreme Court adopted amendments to the rules of civil procedure relating to mortgage foreclosures.
 
 In re Amends, to the Fla. R. of Civ. P.,
 
 44 So.3d 555 (Fla.2010). Included
 
 *696
 
 in these amendments is Form 1.996(b), entitled “Motion to Cancel and Reschedule Foreclosure Sale,” which sets out a list of reasons for cancellation of a scheduled judicial sale, and provides, “If this Court cancels the foreclosure sale, Plaintiff moves that it be rescheduled.” In other words, the supreme court, in adopting the form, apparently did not contemplate that a judicial sale would be left in limbo.
 

 The trial court’s order comports with section 45.031(1) and the policies enunciated by the Foreclosure Task Force and Form 1.996(b). No abuse of discretion has been demonstrated. We affirm the order and remand for the trial court to set a judicial sale of the property.
 

 AFFIRMED and REMANDED.
 

 SAWAYA and PALMER, JJ., concur.
 

 [1]
 

 . LR5A also filed a separate foreclosure action in Broward County concerning the property in that county.
 

 [2]
 

 . Our jurisdiction to review this order is based on Florida Rule of Appellate Procedure 9.130(a)(4).