GROSS, J.
We affirm the procedure the circuit courts utilized in the final foreclosure judgments on appeal, where the courts allowed the plaintiff to pursue its remedy at law and authorized the initiation of the equita *926 ble remedy, the foreclosure sale process, only after the plaintiff certified that the money judgment had not been satisfied.

Facts

These consolidated appeals involve loans that PNC Bank made to corporate entities associated with Anthony V. Pugliese III. In a representative case, PNC sued Pug-liese, Royal Palm Corporate Center Association, Ltd., and Royal Palm Corporate Center, Inc. in a two-count complaint. According to the complaint, PNC lent Royal Palm Corporate Center Association over $3 million. Royal Palm Corporate Center Association put up a piece of real estate as security for the loan; this was not a loan for the purchase money of the real estate. Royal Palm Corporate Center, Inc., the general partner of Royal Palm Corporate Center Association, and Pugliese each executed commercial guaranties for security.
In count one of the complaint, PNC sought a foreclosure judgment on the mortgaged property and, if necessary, a deficiency judgment. In count two, PNC sought money damages for breach of the note and guaranties. The case went to a non-jury trial.
The trial court found in favor of PNC. On the foreclosure count, the court determined that the defendants owed PNC $4,753,786.19. The final judgment did not set a sale of the mortgaged property, but provided:
C. The court is withholding having a sale of the mortgaged property, pending an application by the plaintiff requesting a sale of the mortgaged property and certifying that the monetary judgment has not been satisfied.
D. Upon application by plaintiff requesting a sale of the Mortgaged Property and certifying that the monetary judgment has not been satisfied, this court shall enter an order instructing the Clerk of Court to sell the mortgaged property at the next available sale date in accordance with Section 45.031, Florida Statutes.
The court reserved jurisdiction to handle any remaining issues, such as a deficiency judgment. On the damages count, the trial court repeated that the defendants owed PNC $4,753,786.19, and ordered that PNC “recover from the defendants” that amount, “for which let execution issue.”
The defendants moved for reconsideration and rehearing, among other things. They attacked the structure of the final judgment, which allowed PNC to attempt collection on the money judgment before setting a foreclosure sale. It does not appear that the court ruled on the motion prior to the filing of the notice of appeal.
The above summary of the facts in PNC Bank, N.A. v. Royal Palm Corporate Center Association, Ltd., is similar to the resolution of the other cases. In each case, PNC sued Pugliese and an associated corporation for foreclosure and damages. In each, the trial court found for PNC and implemented the two-step structure of the final judgment described above. The judgments are nearly identical.

Section 45.031 Did Not Require the Trial Courts to Set a Foreclosure Sale

Defendants first contend that the trial courts contravened section 45.031, Florida Statutes (2008), by granting foreclosure without scheduling a foreclosure sale. They argue that subsection 45.031(l)(a) requires that the foreclosure sale be set within a certain time and that it was an abuse of discretion to indefinitely stay the sale. We reject this argument.
In relevant part, subsection 45.031(l)(a) provides:
In the order or final judgment, the court shall direct the clerk to sell the property *927 at public sale on a specified day that shall be not less than 20 days or more than 35 days after the date thereof, on terms and conditions specified in the order or judgment.
The defendants rely on the above language.
However, the plain language of the statute demonstrates that the procedure set forth in section 45.031 is not the exclusive procedure for setting a foreclosure sale and that a judge has the discretion to use a different procedure. The introductory paragraph of section 45.031 states:
In any sale of real or personal property under an order or judgment, the procedure provided in this section and ss. 45.0315-45.035 may be followed as an alternative to any other sale procedure if so ordered by the court.
(Emphasis supplied.) By the use of the term “may” and the suggestion that section 45.031 procedure is an “alternative to any other sale procedure,” the statute plainly gives a circuit judge discretion to tailor the procedure for a foreclosure sale. See The Fla. Bar v. Trazenfeld, 833 So.2d 734, 738 (Fla.2002) (“The word ‘may’ when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the word ‘shall.’ ” (citation omitted)).
The nature of mortgage foreclosures lends support to this interpretation. Mortgages are “foreclosed in equity.” § 702.01, Fla. Stat. (2008). “Historically, courts of equity came into being in order to provide a forum for the granting of relief in accordance with the broad principles of right and justice in cases where the restrictive technicalities of the law prevented the giving of relief.” Hedges v. Lysek, 84 So.2d 28, 31 (Fla.1955). While section 45.031 contains a ready-made procedure for a court to adopt, the statute does not mandate that a court utilize that procedure; rather, the judge may fashion a different sale procedure after considering the equities in the case.
The defendants cite a line of cases to argue that a trial court’s indefinite stay of a sale constitutes an abuse of discretion. Those cases are distinguishable because they involve courts working within the structure of a section 45.031 sale procedure and mortgagees that are prevented from realizing the benefits of a foreclosure judgment, without an equitable basis which justifies the bar.
An exemplar is First Nationwide Savings v. Thomas, 513 So.2d 804 (Fla. 4th DCA 1987). There, a trial court issued a final judgment of mortgage foreclosure, apparently setting the sale date for the property. Id. at 804-05. The sale was stayed, reset, and subsequently postponed. Id. at 805. In the order on the second delay, the trial court cancelled the sale and stated “the sale of subject property shall not be reheld.” Id. On appeal, we held that “[t]his permanent cancellation of the sale without explanation is reversible error.” Id. (emphasis supplied). We reasoned that “[a] lender has the right, under the statutes, except under extraordinary circumstances not found in this record, to proceed with the sale of any real estate on which it has successfully foreclosed its mortgage.” Id. Thus, we reversed and instructed the trial court to set a sale date. Id.
Thomas presents a scenario different than this case. There, the trial court in the final judgment set a date for the sale and adopted the alternative procedure set out in section 45.031, rather than fashioning its own procedure. Once it adopted the statutory procedure, the court’s discretion to indefinitely delay the sale sought by the plaintiff was limited, in the absence of circumstances justifying the delay. In the *928 instant case, however, the final judgments expressly declined to set sale dates so that PNC could pursue its final judgment at law. They provided that the section 45.031 sale procedure would be invoked once PNC certified that it was unable to satisfy the money judgments against the defendants.
The other cases in the line likewise involved situations where sales were actually set, and where the failure to reschedule the sales unjustifiably frustrated the rights of the plaintiffs to the sale of the foreclosed property. See Bankers Trust Co. v. Edwards, 849 So.2d 1160 (Fla. 1st DCA 2003) (citing Thomas); Bankers Trust Co. of Cal., N.A. v. Weidner, 688 So.2d 453 (Fla. 5th DCA 1997); Chem. Mortg. Co. v. Dickson, 651 So.2d 1275 (Fla. 4th DCA 1995) (citing, inter alia, Thomas); A Mortg. Co. v. Bowman, 642 So.2d 123 (Fla. 4th DCA 1994) (citing, inter alia, Thomas ); Admin, of Veteran’s Affairs v. Bertsche, 574 So.2d 320 (Fla. 4th DCA 1991) (citing, inter alia, Thomas). Only after the setting of the sale according to the statutory procedure would the trial court’s discretion to control the timing of the sales fall under the limitations described in the Thomas line of cases.
In addition, the defendants rely on LR5A-JV v. Little House, LLC, 50 So.3d 691 (Fla. 5th DCA 2010). However, the case does not support the defendants’ contention that the statute is a procedural straightjacket for a circuit court. Instead, it supports the notion that, even within the section 45.031 procedure, the circuit court “has reasonable discretion within the statutory framework to set or reset the date for such sale,” which is “consistent with the equitable nature of such proceedings,” id. at 693-94; a circuit court has the ability to “consider the interests of all of the parties in determining the matter of the judicial sale,” id. at 695.
Finally, the defendants base an argument upon Rule of Civil Procedure Form 1.996(a), “Final Judgment of Foreclosure.” [1] The defendants contend that the final judgments unlawfully deviated from this form, since the form provides in paragraph 3: “If the total sum with interest at the rate described [ ... ] are not paid, the clerk of this court shall sell the property at public sale on ... (date) ..., to the highest bidder for cash [ ... ] in according with section 45.031, Florida Statutes[.]” Nothing in the Supreme Court’s adoption of the form makes its utilization mandatory in all cases; rather, its purpose is to provide a clear and readable judgment that is in “conformity with current statutory provisions and requirements.” In re Amendments to Fla. R. of Civ. P., 44 So.3d at 558. In any event, a requirement to follow this particular form would be at odds with the discretion granted in section 45.031.
In sum, because section 45.031 gives a circuit court discretion to fashion the foreclosure sale procedure, and limits that discretion only after the court uses the statutory procedure to set a sale date, the trial courts in these cases did not abuse their discretion in withholding the setting of the sale of the subject properties until PNC certified that its money judgments were unsatisfied.

PNC Could Pursue an Action on the Note and and an Action on the Mortgage at the Same Time

In their second issue, the defendants contend that the trial courts abused their *929 discretion by awarding foreclosure and damages and allowing PNC to attempt to collect damages without submitting to a deficiency hearing. We reject this argument as well.
It has long been the common law that, to collect money owed on a note, a mortgagee may pursue its legal and equitable remedies simultaneously, until the debt is satisfied. In the early case of Booth v. Booth (1742) Eng. & Wales Chancery, 2 Atk. 242 (3d. ed. 1754), the plaintiff brought an action against the defendant for the accounting of an estate owned by the plaintiffs brother, for which estate the defendant had been the guardian and on which he had obtained a mortgage. Id. at 242-48. The defendant brought the action of ejectment for possession of the estate[2] and, at the same time, an action “to foreclose the equity of redemption.”[3] Id. The plaintiff sought a stay of the defendant’s ejectment action because of his concurrent foreclosure proceedings. Id. Lord Chancellor Hardwieke wrote, “Though the defendant is foreclosing the equity of redemption here, yet he is not precluded from bringing an ejectment at law at the same time, unless there is something very particular to take it out of the common case.”[4] Id. at 243. But because whether the mortgage was already satisfied was in dispute, “it is not quite so clear as the common case,” and the chancellor stayed the ejectment. Id.
More than 200 years later, the supreme court of New Mexico articulated the complete rule, its rationale, and the minority view:
Under the traditional common law rule, upon default by the mortgagor, a mortgagee has independent remedies which he or she may pursue. The mortgagee may sue either on the note or foreclose on the mortgage, and may pursue all remedies “at the same time or consequently.” As long as there is no double recovery on the debt, the mortgagee may pursue either or both remedies. Absent a statute to the contrary, “state courts have uniformly held that holders of notes secured by a deed of trust can both sue the maker or guarantor and foreclose on the property regardless of which action they pursue first.”
The distinction between the two remedies is found in the historic view that a foreclosure action is purely quasi in rem, affording relief only against the secured property, and a suit on a bond or note is in personam.[5] A judgment of foreclo *930 sure applies only to the property secured by the mortgage, and does not impose any personal liability on the mortgagor. If the foreclosure of the mortgaged property fails to satisfy the debt secured by the mortgage, the creditor may then pursue an action on the underlying note.
Some jurisdictions have adopted legislation providing for a “one action” rule that requires a mortgagee to file only one lawsuit in which he.or she pursues all remedies for a debt that is secured by a mortgage. One of the purposes of such statutes is to protect the mortgagor from multiple lawsuits since the mortgagee’s separate causes of action, even though theoretically distinct, are closely connected and should be decided in one suit.
Kepler v. Slade, 119 N.M. 802, 896 P.2d 482, 484-85 (1995) (footnote omitted) (citations omitted).
The traditional common law rule is the majority rule in the United States; it has been recognized by the Supreme Court of the United States on at least three occasions.[6] As the Kepler court noted, the jurisdictions that do not follow the rule have statutes that require a mortgagee to file only one suit for all of his remedies (the “one-action rule”), or consecutively.[7]
*931 Florida is in the majority. Less than a year after Florida became a state, the Supreme Court noted this tenet of the common law without any disagreement in Manley v. Union Bank of Florida, 1 Fla. 160 (Fla.1846). There, a mortgagee argued “that a mortgagee has, at common law, three remedies, all of which he may pursue at the same time, viz: that he may bring suit at law, upon the bond or note, secured by the mortgage; institute an action of ejectment, to put himself in possession of the rents and profits of the estate; and file a bill in Chancery, to foreclose the mortgage.” Id. at 214. To this, the Court responded, “All this is very true.” Id. Even if the Supreme Court had not approved the rule, it would have been the common law of this state by operation of statute.[8]
We have found no Florida statute, and none has been called to our attention, that would prevent a mortgagee from pursuing legal and equitable remedies at the same time. The statute concerning deficiencies, section 702.06, Florida Statutes (2008), is more limited in nature than the statutes in the minority of states. Although the reporters of the Restatement seem to believe that section 702.06 is something of a one-action rule, see Restatement (Third) of Property (Mortgages) § 8.2 cmt. b (1997), neither its language nor its history or purpose support that reading.
Section 702.06 binds a plaintiff to a deficiency decree once the plaintiff sets the deficiency process in motion, but expressly provides that “the complainant shall also have the right to sue at common law to recover such deficiency,” except against an original mortgagor when the mortgage was for the purchase price of the subject property, the original mortgagee buys the property at the foreclosure sale, and the original mortgagee obtains a deficiency decree against the original mortgagor.[9] Not only has PNC not yet started the deficiency process, but the mortgages here were not for the purchase price of the subject properties. If PNC certifies non-satisfaction of the money judgments, it will be bound to the deficiency process and only if the trial courts do not adjudicate the merits of a deficiency will PNC be able *932 to bring separate law actions on the foreclosure judgments for the deficiency.
With regard to the statute’s history, the legislature enacted what is now section 702.06, which took the place of an old equity rule of like effect, to grant a court the power to enter deficiency decrees; “[b]efore the adoption of [the equity rule] in 1873 ... no deficiency was authorized in equity courts, and the only remedy for a balance due was a suit at law.”[10] See Letchworth v. Koon, 99 Fla. 451, 127 So. 321, 322 (1930). Section 702.06’s grant of such power was designed to “relieve the parties from the expense and vexation of two suits, one equitable and one legal,” and to allow “the whole controversy [to] be adjusted in one suit.” Edwards, 130 So. at 59 (emphasis added). This is what PNC has done.
It appears we have not seen these remedies pursued at the same time in the same action because, before 1967, a suit at law on a note and a suit in equity to foreclose a mortgage proceeded in separate courts. In 1967, Florida adopted rules of civil procedure which gave circuit courts jurisdiction to hear cases in which counts at law and counts in equity could be set forth in the same complaint as alternative grounds for relief. In re Fla. Rules of Civil Procedure 1967 Revision, 187 So.2d 598, 600 (Fla.1966); Fla. R. Civ. P. 1.040, 1.110(g). In fact, Rule 1.110(g) provides that claims may be “stated in the alternative,” “regardless of consistency and whether based on legal or equitable grounds or both.”
As alluded to by the Kepler court, the reason that an action at law on a note may be pursued simultaneously with the equitable remedy of foreclosure is that the two remedies are not inconsistent. Junction Bit & Tool Co. v. Village Apartments, Inc., 262 So.2d 659, 660 (Fla.1972). “[P]ursuit of one without satisfaction is not a bar to the other.” Klondike, Inc. v. Blair, 211 So.2d 41, 43 (Fla. 4th DCA 1968), approved, Junction Bit, 262 So.2d at 660; see also Gottschamer v. August, Thompson, Sherr, Clark & Shafer, P.C., 438 So.2d 408 (Fla. 2d DCA 1983) (an action on a note and an action to foreclose on a mortgage are not inconsistent remedies). Klondike is distinguishable but instructive. In Klondike, the plaintiffs first obtained a judgment on the note, did not cause execution to issue, and never received any payments; over a year after the issuance of the final judgment on the note, the plaintiff sued in foreclosure.[11] 211 So.2d at 41. We reversed a summary judgment in favor of the defendant, holding that the doctrine of election of remedies did not apply because the remedies were not inconsistent. Id. Unlike the plaintiff in Klondike, PNC did not bring separate actions on the notes before pursuing foreclosure. But, the principle articulated in Klondike is broad enough to apply here.
*933 In light of the common law, the merger of equity arid law courts, and the consistency of the remedies, the instant suit at law on the note and guaranties was properly joined with the mortgage foreclosure. Nothing precluded PNC from pursuing its legal remedy first;[12] if the judgment is unsatisfied, the court has retained the ability to set a foreclosure sale. That sequence — money judgments first, foreclosures second — approximates the procedure upheld by this Court in Klondike and the supreme court in Junction Bit & Tool Co., and it is consistent with the principle that an unsatisfied money judgment is no bar to a later foreclosure.
Defendants rely heavily on Farah v. Iberia Bank, 47 So.3d 850 (Fla. 3d DCA 2010), to argue that PNC was limited to the deficiency process if it sought to obtain judgments beyond foreclosure. However, Farah is factually distinguishable. Though the opinion is light on facts,[13] it appears that the Farah final judgment contained both a money judgment and a foreclosure judgment; the money judgment ordered that “execution issue,” and the foreclosure judgment set a sale of the property. Thus, the Farah final judgment simultaneously allowed the plaintiff to execute on the money judgment and foreclose on the subject property, which is impermissible. The third district struck the language “for which let execution issue” from the money judgment and allowed the foreclosure to proceed. Unlike the Farah final judgment, the judgments here did not both issue an immediately executable money judgment and initiate the foreclosure process by setting a sale of the property. Rather, the judgments set up the procedure contemplated by Klondike and Junction Bit, allowing pursuit of the legal remedies and permitting the initiation of the foreclosure sale process only after PNC certified that the money judgment had not been satisfied. This structure assures that, while PNC was able to pursue both remedies, it will not get a double recovery.

Affirmed.

MAY, C.J., and STEVENSON, J., concur.

. The Florida Supreme Court adopted this form in In re Amendments to the Florida Rules of Civil Procedure, 44 So.3d 555 (Fla.2010).

. Ejectment is an action at law for a person to recover possession of property from a second person possessing it in hostility to the first person's right. 28A C.J.S. Ejectment §§ 3, 6.

. Mortgagors held the equity of redemption; to obtain clear title to the mortgaged property, the mortgagee would bring a suit to foreclose that equity. See Restatement (Third) of Property (Mortgages) § 3.1 cmt. a (1997).

. See also Burnell v. Martin (1780) King’s Bench, 2 Doug. 417, 417 (4th ed. 1813) ("for that it had been settled over and over again, that a person, in such a case [on a bond secured by a mortgage], is at liberty to pursue all his remedies at once”); Schoole v. Sall (1803) Ireland Chancery, 1 Doug. 176, 176 ("The general rule is that when a party [is] suing in this court, he shall not be allowed to sue at law for the same debt. But the case of a mortgagee is an exception to this rule; he has a right to proceed on his mortgage in equity and his bond at law, at the same time.”).

. Ga. Cas. Co. v. O'Donnell, 109 Fla. 290, 147 So. 267, 292-93 (1933) ("A suit to foreclose a mortgage is to a certain extent and for certain purposes a proceeding in rem, since it is primarily directed against the mortgaged property, but it is more accurately termed ‘quasi in rem.’ ” (citation omitted)); Edwards v. Meyer, 100 Fla. 235, 130 So. 57, 59 (1930) ("Foreclosure proceedings in this state are in *930 the nature of a proceeding in rem and in personam, the purpose of which is to subject the security furnished by the mortgage to the payment of the debt secured by it and to secure a personal judgment for the remainder in case the proceeds of the sale of the mortgaged property are not sufficient to extinguish the debt, where there is a separate written obligation to pay the debt, or the mortgage contains a covenant to pay.”).

. See Ober v.Gallagher, 93 U.S. 199, 208, 23 L.Ed. 829 (1876); Gilman v. Miss. Tel. Co., 91 U.S. 603, 616, 23 L.Ed. 405 (1875); Hughes v. Edwards, 22 U.S. (9 Wheat) 489, 494, 6 L.Ed. 142 (1824). See also Micou v. Ashurst, 55 Ala. 607, 613 (1876); Haney v. Phillips, 72 Ark. App. 202, 35 S.W.3d 373, 374 (2000); Foothills Holding Corp. v. Tulsa Rig, Reel & Mfg. Co., 155 Colo. 232, 393 P.2d 749, 751 (1964); New Haven Sav. Bank v. Warner, 128 Conn. 662, 25 A.2d 50, 52 (1942); Berg v. Liberty Fed. Sav. & Loan Ass'n, 428 A.2d 347, 349 (Del. 1981); Szego v. Kingsley Anyanwutaku, 651 A.2d 315, 317 (D.C.1994); Montgomery v. Fouche, 125 Ga. 43, 53 S.E. 767, 768 (1906); Vansant v. Allmon, 23 Ill. 30 (1859); Hodgen v. Roy, 102 Kan. 197, 169 P. 1143, 1144 (1918); Chambers v. Keene, 58 Ky. 289, 294 (1858); Ely v. Ely, 72 Mass. 439, 441 (1856); Andrews v. Scotton, 2 Bland 663, 665 (Md. Ch. 1829); City of St. Paul v. St. Anthony Flats Ltd. P'ship, 517 N.W.2d 58, 62 (Minn.Ct. App. 1994); Colby v. McClintock, 68 N.H. 176, 40 A. 397, 397 (1894); Kepler v. Slade, 119 N.M. 802, 896 P.2d 482, 485 (1995); Dunkley v. Van Buren, 3 Johns. Ch. 330, 331 (N.Y.Ch. 1818) (but modified to generally prohibit such unless court exercises discretion to allow, see N.Y. Real Prop. Acts. Law § 1301 (McKinney)); Fifth Third Bank v. Hopkins, 177 Ohio App.3d 114, 894 N.E.2d 65, 70 (2008); Anderson v. Warren, 196 Okla. 251, 164 P.2d 221, 223 (1945); Elmwood Fed. Sav. Bank v. Parker, 446 Pa.Super. 254, 666 A.2d 721 (1995); Hunt v. Darling, 26 R.I. 480, 59 A. 398, 399 (1904); Hatfield’s Ex’rs v. Kennedy, 1 Bay 501 (S.C.Com.Pl.Gen.Sess. 1795) (cited with approval in Lever v. Lighting Galleries, Inc., 374 S.C. 30, 647 S.E.2d 214, 216 (2007)); S.D. Codified Laws § 21-47-6 (consecutive, but, like New York, within court’s discretion); French v. May, 484 S.W.2d 420, 428 (Tex.Civ.App.1972); Shapiro v. Gore, 106 Vt. 337, 174 A. 860, 860 (1934); Priddy v. Hartsook, 81 Va. 67, 68-69 (1885); Bank of Sheboygan v. Fessler, 218 Wis. 244, 260 N.W. 441, 441 (1935).

. See Alaska Stat. § 09.45.200 (consecutively); Ariz.Rev.Stat. § 33-722 (consecutively); Cal. C.C.P. § 726 (one action); Idaho C. § 6-101 (one action); Ind.Code § 32-30-10-10 (consecutively); Iowa Code § 654.4; Mich. Comp. Laws § 600.3105 (consecutively); Minn.Stat. § 580.02 (consecutively); Mont.Code § 71 — 1— 22 (one action); Neb.Rev.Stat. § 25-2140 (consecutively); N.J. 2A:50-2 (consecutively); Nev.Rev.Stat. § 40.430 (consecutively, though there is an express provision for waiver in another statute); Or. L. § 429 (consecutively); Utah Code § 78B-6-901 (one action); Wash. Rev.Code § 61.12.120 (consecutively); Wyo. Stat. § 34-4-103 (consecutively). In North *931 Dakota, the state supreme court has interpreted an anti-deficiency statute into a modified one-action rule. See First State Bank of Cooperstown v. Ihringer, 217 N.W.2d 857, 864 (N.D. 1974) (interpreting anti-deficiency statute into a modified one-ac.tion rule).

. Section 2.01, Florida Statutes (2008), provides that the common law of England as of July 4, 1776 is "of force in this state,” provided that it is of a "general and not local nature” and is "not inconsistent with” federal or state constitutions and statutes.

. A general prayer for relief in a foreclosure action is sufficient to permit a court in its discretion "to render a deficiency degree if an appropriate motion therefor was made.” Boyles v. Alt. Fed. Sav. & Loan Ass’n of Ft. Lauderdale, 201 So.2d 909, 910 (Fla. 4th DCA 1967). A plaintiff cannot pursue an action on the note or guaranty where the plaintiff has prayed for the court to exercise its equity jurisdiction and the court has adjudicated the issue, either granting or denying judgment.See Provost v. Swinson, 109 Fla. 42, 146 So. 641, 643 (1933); see also Capital Bank v. Needle, 596 So.2d 1134, 1136 (Fla. 4th DCA 1992) (“where a party seeks a foreclosure and a deficiency judgment for failure to pay on a promissory note, and there is an actual adjudication on the merits of the claim for deficiency, that party cannot proceed on a new action based on the same promissory note”). But, when a plaintiff forecloses on a security and the trial court does not exercise its jurisdiction to consider the merits of a deficiency judgment, the plaintiff may file an action on the promissory note or guaranty to recover the remaining indebtedness. See LPP Mortg. Ltd. v. Cacciamani, 924 So.2d 930 (Fla. 3d DCA 2006) (guaranty); De Las Cuevas v. Nat’l Enters. Inc., 927 So.2d 41 (Fla. 3d DCA 2006) (note).

. Rule 89 of Florida Rules of Equity Actions was adopted in 1873 and provided that a deficiency "could be granted under prayer for general relief if the defendant was personally served with process, or appeared.” Letchworth, 127 So. at 322. Chapter 7839, Laws of Fla. (1919), "undertook to make the entry of a deficiency mandatory, thereby relieving the court of any discretion in the matter.” Id. Chapter 7839 was repealed, see ch. 12325, Laws of Fla. (1927), and replaced with chapter 11993, Laws of Fla. (1927), which granted the court discretion to enter a deficiency, see Letchworth, 127 So. at 323. The new statute was amended by chapter 13625, Laws of Fla. (1929), to include the purchase-money proviso.

. Based on the time frames described in Klondike, it appears that the suit at law was filed before the 1967 merger of the law and equity courts.

. See Kay v. Anderson, 345 F.2d 169, 170 (5th Cir.1965) (it was "well settled under the law of Florida that a holder of a note secured by a mortgage may bring an action on the note without seeking foreclosure on the mortgage, even over the debtor’s insistence that he first look to such security.”); Webber v. Blanc, 39 Fla. 224, 22 So. 655, 656 (1897) (where court observed that the "fact that a mortgage was taken to secure the note did not deprive the holder thereof of the legal remedy to collect it.”); Syfrett v. Amsouth Bank of Fla., 588 So.2d 46, 47 (Fla. 1st DCA 1991) ("The bank did not infringe upon any rights of appellant by first obtaining a money judgment against appellant based upon a personal guaranty, and then proceeding to foreclose a security interest in real estate owned by appellant, based upon the same underlying debt.” (citing Gottschamer)).

. PNC has filed a copy of the Farah final judgment as an appendix to its answer briefs. This has assisted us in discerning the facts upon which the opinion is based.