NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


BONITA REAL ESTATE PARTNERS, LLC, )
a Florida limited liability company; ALICO )
RETAIL HOLDINGS, LLC, a Florida limited )
liability company; SCOTT A. CHAPPELLE, )
an individual; and CHARLES W. CROUCH, )
an individual, )
                                 )
         Appellants, )
                                 )
v. )         Case No. 2D15-5492
                                 )
SLF IV LENDING, L.P., a Texas limited )
partnership, )
                                 )
         Appellee. )
_____ )

Opinion filed July 14, 2017.

Appeal from the Circuit Court for Lee
County; John E. Duryea, Jr., Judge.

Christopher D. Donovan of Roetzel &
Andress, LPA, Naples, for Appellants.

Landis V. Curry, III, and Mark M. Wall of
Hill, Ward & Henderson, P.A., Tampa,
for Appellee.


MORRIS, Judge.

            The appellants—the borrowers and guarantors of a commercial real estate

loan—appeal a final judgment entered in favor of the lender, SLV IV Lending, L.P.  The

trial court concluded that the parties agreed to apply Texas law to the lender's claim for deficiency and that under Texas law, the appellants waived their right to challenge the amount of the deficiency. We agree with the appellants' argument that the trial court erred in applying Texas law because the loan documents state that Florida law applies to foreclosures and the claim for deficiency in this case was a continuation of the foreclosure. Accordingly, we reverse the decision of the trial court in that regard.

**I. Background**

In 2011, appellants Bonita Real Estate Partners, LLC, and Alico Retail Holdings, LLC, (the borrowers) borrowed $6,100,000 from the lender to develop real property in Lee County. The borrowers executed a promissory note and a mortgage, and appellants Scott A. Chappelle and Charles W. Crouch (the guarantors) executed guarantees by which they agreed to be personally liable for certain "recourse obligations" under the note.

The promissory note provided that the note and other loan documents would be governed by Texas law but that Florida law would govern foreclosure:

> THIS NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS AND APPLICABLE LAWS OF THE UNITED STATES OF AMERICA, WITHOUT REGARD TO CONFLICTS OF LAW, <u>EXCEPT THAT THE LAWS OF THE STATE WHERE THE PROPERTY IS LOCATED (IF DIFFERENT FROM THE STATE OF TEXAS) SHALL GOVERN THE CREATION, PERFECTION, PRIORITY AND FORECLOSURE OF THE LIENS CREATED BY THE MORTGAGE ON THE PROPERTY OR ANY INTEREST THEREIN</u>.

(Emphasis added.) The mortgage provides:

LENDER SHALL COMPLY WITH THE APPLICABLE LAW OF THE STATE OF FLORIDA, TO THE EXTENT REQUIRED IN CONNECTION WITH THE FORECLOSURE OF THE SECURITY INTERESTS AND LIENS CREATED HEREBY; PROVIDED, HOWEVER, THIS SUBSECTION SHALL IN NO EVENT BE CONSTRUED TO PROVIDE THAT THE SUBSTANTIVE LAW OF THE STATE OF FLORIDA SHALL APPLY TO THE OBLIGATIONS SECURED BY THIS MORTGAGE WHICH ARE AND SHALL CONTINUE TO BE GOVERNED BY THE SUBSTANTIVE LAW OF THE STATE OF TEXAS. THE PARTIES FURTHER AGREE THAT LENDER MAY ENFORCE ITS RIGHTS UNDER THIS MORTGAGE AND THE LOAN DOCUMENTS IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.

(Emphasis added.)

The mortgage and the guarantees also contain waivers of certain remedies or defenses under Texas law. The mortgage provides that the borrowers "waive[] all rights, remedies, claims and defenses based upon or related to [s]ections 51.003, 51.004 and 51.005 of the Texas Property Code to the extent the same pertains or may pertain to any enforcement of the [n]ote, this [m]ortgage or any of the other [l]oan [d]ocuments." And the guarantees provide that the guarantors "waive . . . any and all rights under [s]ections 51.003, 51.004 and 51.005 of the Texas Property Code." These statutes address deficiency judgments and permit a borrower or a guarantor to request that the deficiency amount be offset by the fair market value of the property if the fair market value is greater than the sale price of the property. Tex. Prop. Code Ann. §§ 51.003, .004, .005 (West 2011). Thus, by waiving their rights under those Texas statutes, the appellants waived their right to offset the deficiency by the fair market value of the property, which is permitted under Texas law. See Moayedi v.

Interstate 35/Chisam Rd., L.P., 438 S.W.3d 1, 6 (Tex. 2014).  This is pertinent to the issue on appeal which we address.

The borrowers defaulted on the loan, and the lender filed an action in Florida circuit court against the borrowers and the guarantors.  The original complaint alleged a count against the borrowers to foreclose on the mortgage (count I), a count against the borrowers seeking money due on the promissory note (count II), and a count against the guarantors seeking money damages pursuant to the terms of the guarantees (count III).  The trial court entered a judgment of foreclosure in favor of the lender in the amount of $6,983,325 in May 2012, and in the judgment, the trial court reserved jurisdiction for the entry of a deficiency judgment.  A foreclosure sale was conducted in June 2012, and the lender purchased the property for $91,200.

In March 2013, in the same underlying foreclosure action, the lender filed a motion for deficiency judgment pursuant to section 702.06, Florida Statutes (2012), claiming that the "fair market value of the [m]ortgaged property on the date of the foreclosure sale was less than the total indebtedness owed to [the lender] under the [f]oreclosure judgment."  The parties disputed whether the lender had already foreclosed the development rights to the property, so the lender sought and obtained permission to file an amended complaint to allege a count to foreclose against the borrowers' non-real estate interests in the property, i.e., the development rights.  The dispute on that issue was resolved after a bench trial with the trial court concluding that the development rights had been foreclosed in the prior judgment.  Regarding the lender's claim for deficiency, the appellants amended their answer and affirmative defenses to argue that the property's value exceeds the indebtedness.  The appellants

asserted that the property was worth $7,550,000, whereas the lender argued that the property was worth $4,500,000 and that the deficiency was $2,500,000.

The lender's claims for damages against the borrowers under the note (count III) and against the guarantors under the guarantees (count IV) were set for trial in November 2014. In a brief filed before trial, the lender argued for the first time that Texas law applies to the lender's claims to collect money damages on the debt. The parties disputed whether Texas law applies to the lender's claims on counts III and IV and for deficiency. If Texas law applies, the borrowers and guarantors waived their right under Texas law to have the fair market value of the property considered when determining the amount of deficiency. See Moayedi, 438 S.W.3d at 6. But if Florida law applies, the borrowers and guarantors had not waived such right and could present evidence concerning the property's fair market value. See Vantium Capital, Inc. v. Hobson, 137 So. 3d 497, 499 (Fla. 4th DCA 2014) ("[O]nce the party seeking a deficiency judgment introduces evidence of the foreclosure sale price, the burden shifts to the judgment debtor to present evidence concerning the property's fair market value." (quoting Liberty Bus. Credit Corp. v. Schaffer/Dunadry, 589 So. 2d 451, 452 (Fla. 2d DCA 1991))). The appellants argued that Florida law should apply to the deficiency claim because it is a continuance of the foreclosure and that the lender's reliance on Texas law was not asserted in a timely manner. The trial court determined that Texas law applies to the lender's claims for damages based on the language of the documents and that while Florida law applies to the foreclosure, Texas law applies to the claim for deficiency. The parties and trial court interpreted that ruling to mean that the appellants could not present evidence of fair market value to offset the deficiency, since they had

waived their right to do so in the language of the mortgage and guarantees. The trial court also rejected the appellants' argument that the lender had waived its claim that Texas law applies by not asserting it earlier in the proceedings.

The appellants moved for reconsideration of the issue of whether Texas law applies to the deficiency, and the trial court denied the motion. The trial judge then granted the appellants' motion to disqualify her, and a new judge was assigned to the case. The appellants asked the successor judge to reconsider the issue of whether Texas law applies, and after two hearings, the judge denied the appellants' motion for reconsideration, confirming the earlier ruling that Texas law applies.

The lender then moved for partial summary judgment on counts III and IV, claiming that Texas law applies to the damages portions of those claims and that the appellants waived their right under Texas law to offset the fair market value against the total indebtedness owed. The lender acknowledged that whether the appellants were liable based on a recourse event would need to be determined at a trial. The trial court entered an order granting partial summary judgment on the damages portions of counts III and IV, concluding that pursuant to Texas law, the deficiency should be calculated as the difference between the amount of the judgment of foreclosure and the bid price, with the difference being $6,892,125.

The trial court conducted a trial on whether recourse events had occurred that would render the appellants liable, and the trial court found in favor of the lender on those events. The trial court entered a forty-nine-page judgment detailing the full recourse events and limited recourse events establishing liability on the part of the appellants. The trial court found the appellants jointly and severally liable for the

amount of $6,892,125 plus interest in the amount of $1,117,562.79, for a total "deficiency" of $8,009,687.79.[1]

### II. Analysis

The appellants argue that the trial court erred in applying Texas law to the lender's claim for deficiency because the loan documents provide for the application of Florida law to foreclosure and a claim for deficiency is a continuation of a claim for foreclosure.[2] The lender responds that it was pursuing its legal claims on the note and guarantees and that its claims were not for a deficiency judgment. The lender also argues that the parties agreed that its claims on the note and guarantees would be governed by Texas law.

We must first determine whether the final judgment entered is a deficiency judgment. Typically, a judgment of foreclosure and the resulting sale of the property encompass both the remedy at law and the equitable remedy of mortgage foreclosure. Aluia v. Dyck-O'Neal, Inc., 205 So. 3d 768, 773 (Fla. 2d DCA 2016) (recognizing that "the note and mortgage merge into the foreclosure judgment where the foreclosure suit is both an action at law for the balance due under the note and an action in equity to foreclose the mortgage"). But here, the count for foreclosure resulted in a judgment of foreclosure in May 2012 and a foreclosure sale in June 2012, while the count on the note did not proceed to trial until two years later, resulting in a final judgment exceeding $8 million.

---

[1]The trial court also found that the appellants are liable for limited recourse events in the amount of $192,943.53. The appellants do not challenge this amount or the trial court's findings regarding the recourse events.

[2]We find no merit in the three other issues raised by the appellants on appeal.

A party "has the right to pursue both a claim for foreclosure of the mortgage and a claim for damages on the note." Hammond v. Kingsley Asset Mgmt., LLC, 144 So. 3d 673, 675 (Fla. 2d DCA 2014). However, "[i]t is axiomatic that a party can only recover once on the same debt." Id. (quoting Century Grp., Inc. v. Premier Fin. Servs. E., L.P., 724 So. 2d 661, 662 (Fla. 2d DCA 1999)); see Royal Palm Corp. Ctr. Ass'n v. PNC Bank, N.A., 89 So. 3d 923, 933 (Fla. 4th DCA 2012) (recognizing that it is impermissible for a judgment to "simultaneously allow[] the plaintiff to execute on the money judgment and foreclose on the subject property"). Once the party has obtained a foreclosure sale of the property, it cannot collect on the note other than to pursue the appropriate deficiency amount. See Hammond, 144 So. 3d at 676.

"A deficiency decree is one for the balance of the indebtedness after applying the proceeds of a sale of the mortgaged property to such indebtedness." L.A.D. Prop. Ventures, Inc. v. First Bank, 19 So. 3d 1126, 1127 (Fla. 2d DCA 2009) (quoting Commercial Bank of Ocala v. First Nat'l Bank of Gainesville, 87 So. 315, 316 (Fla. 1920)). The lender in this case filed a motion for deficiency under section 702.06, which authorizes a trial court to enter a deficiency decree "[i]n all suits for the foreclosure of mortgages." Thus, while a judgment of foreclosure is a final order, " 'the law contemplates a continuance of the proceedings for entry of a deficiency judgment' as a 'means of avoiding the expense and inconvenience of an additional suit at law to obtain the balance of the obligation owed by a debtor.' " Id. (quoting Timmers v. Harbor Fed. Sav. & Loan Ass'n, 548 So. 2d 282, 283 (Fla. 1st DCA 1989)); see Grace v. Hendricks, 140 So. 790, 794 (Fla. 1932) ("The order for deficiency judgment is so dependent on, and merely ancillary to, the foreclosure and sale . . . ." (quoting City Bank

of Portage v. Plank, 124 N.W. 1000 (Wis. 1910))).  Indeed, a deficiency does not exist without a foreclosure judgment and sale.  See, e.g., Singleton v. Greymar Assocs., 882 So. 2d 1004, 1007 (Fla. 2004) ("[A] necessary predicate for a deficiency is an adjudication of foreclosure." (quoting Capital Bank v. Needle, 596 So. 2d 1134, 1134 (Fla. 4th DCA 1992))); Chrestensen v. Eurogest, Inc., 906 So. 2d 343, 345 (Fla. 4th DCA 2005) ("[T]here can be no action for a deficiency where there has been no foreclosure judgment and sale.").

We note that section 702.06 provides in relevant part that a party "shall also have the right to sue at common law to recover [a] deficiency."  The lender in this case filed a motion for deficiency—and obtained a determination of deficiency—in the same underlying foreclosure suit.  Thus, it is clear in this case that "[t]he motion for deficiency was a continuance of the foreclosure proceedings."  L.A.D. Prop. Ventures, Inc., 19 So. 3d at 1128; see also Timmers, 548 So. 2d at 283-84 (holding that "motion for a deficiency was part in parcel to the foreclosure proceedings").  Thus, the final judgment on the note in this case must be treated as a deficiency determination.  This is consistent with how the trial court treated the lender's claim for monetary damages, referring to the amount as the "deficiency."  The language of the note and the mortgage provide that Florida law governs the foreclosure of the lien created by the mortgage, and we conclude that this includes the lender's claim for deficiency.  Thus, the trial court erred in applying Texas law to the deficiency determination, and we reverse the portion of the final judgment that determines the deficiency.

The lender argues that its claims on the note and guarantees did not arise out of the foreclosure.  As discussed above, because the lender had already obtained a

foreclosure and had purchased the property at a foreclosure sale, its claim for damages on the note was limited to the amount of the deficiency.[3] We recognize that the borrowers' liability on the note had not been determined prior to the 2014 trial, which resulted in the 2014 final judgment. But to the extent that the final judgment awards the lender an amount due on the note, representing a difference between the sale price and the indebtedness, that portion of the final judgment operates as a deficiency judgment. Even if the final judgment were not considered a deficiency judgment or determination, the final judgment in this case is the continuation of the lender's claim for "foreclosure, which encompassed both a remedy at law and the equitable remedy of mortgage foreclosure," Aluia, 205 So. 3d at 773, because the lender proceeded on the mortgage and note and had already obtained a foreclosure judgment and sale. Either way, the lender's claim on the note is part of the foreclosure in this case.

We recognize that a party may pursue a claim on a guaranty along with a foreclosure claim as long as the party has not received full satisfaction of either claim. See Gottschamer v. August, Thompson, Sherr, Clark & Shafer, P.C., 438 So. 2d 408, 409 (Fla. 2d DCA 1983). However, the language of the guarantees in this case make clear that the guarantees were made in connection with the note and mortgage and that the guarantors are liable for the borrowers' "obligations . . . to [l]ender under the [n]ote, [m]ortgage, and all other [l]oan [d]ocuments with respect to, and to the full extent of, any and all losses, damages, costs, expenses, liabilities, claims or other obligations of, to, incurred or suffered by [l]ender." On remand, the parties will have an opportunity to

_____

[3]While the mortgage contained a waiver under Texas law of the borrowers' right to offset the deficiency by the fair market value of the property, the note did not contain such a waiver.

address how a new determination on the issue of deficiency under Florida law affects the lender's claims on the guarantees.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

LUCAS and BADALAMENTI, JJ., Concur.